IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KANA ENERGY SERVICES, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | |
| JIANGSU JINSHI MACHINERY GROUP CO. LTD.; JMP PETROLEUM TECHNOLOGIES, INC.; HELIOS OIL & GAS EQUIPMENT LLC; JIANGSU JINJIA DRILLING & PRODUCTION EQUIPMENT CO., LTD.; JIANGSU JINSHI TECHNOLOGY CO., LTD.; JIANGSU JINSHI CASTING & FORGING CO., LTD.; XINJIANG JMP DRILLING EQUIPMENT CO., LTD.; JIANGSU JINSHI FUYUAN MACHINERY CO., LTD.; JIANGSU JINSHI VALVE CO., LTD.;JINHU JINGYUE MACHINERY CO., LTD.; SHANGHAI JMP DRILLING EQUIPMENT CO., LTD.; KANA KUNSHAN PETROLEUM MACHINERY CO., LTD., | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. H-19-0213 |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kana Energy Services, Inc. ("Kana" or "Plaintiff") sued defendants Jiangsu Jinshi Machinery Group Co., Ltd. ("JMP"); JMP's United States subsidiary, JMP Petroleum Technologies, Inc. ("JMP Technologies"); Helios Oil & Gas Equipment ("Helios"); and another JMP subsidiary, Jiangsu Jinjia Drilling & Production Equipment Co., Ltd. ("JHK"), among others, in the 190th District Court of Harris County, Texas.[1] JMP timely removed the action to

---

[1]See Third Amended Petition and Application for Injunctive Relief ("Kana's State Court Petition"), Exhibit B to Plaintiff's Motion to Remand ("Plaintiff's Motion"), Docket Entry No. 6, p. 132.

this court on January 18, 2019.² Pending before the court is Plaintiff's Motion to Remand (Docket Entry No. 6). For the reasons explained below, Plaintiff's Motion will be granted, and this action will be remanded for further proceedings in the state court.

## I. Factual and Procedural Background

This action involves a dispute between former partners in a joint venture. Kana entered into an alleged oral agreement with JMP, JHK, and other defendant entities ("JMP Group" or the "JMP Entities") whereby JMP Group made Kana the exclusive distributor of JMP products in North America.³ JMP Group promised to provide Kana with products that complied with the standards set out by the American Petroleum Institute ("API").⁴ Kana was responsible for marketing and distributing JMP's products.⁵ Kana and the JMP Entities agreed to split the profits of sales made through the arrangement on a 50/50 basis.⁶

The parties' joint venture was never put to writing in a formal contract -- Kana claims that the joint venture was an oral agreement that became "further memorialized in purchase orders and

---

²See Notice of Removal of Action ("Notice of Removal"), Docket Entry No. 1.

³See Kana's State Court Petition, Exhibit B to Plaintiff's Motion, Docket Entry No. 6, p. 140.

⁴See id.

⁵See id.

⁶See id.

formalized through a course of dealing that started immediately in 2014 when [JMP Group] began shipping API-6A equipment to Kana's customers."[7] In January of 2014 Kana and JHK executed Contract No. KA15100002 ("Contract '002").[8] Contract '002 stipulated the terms under which JHK would sell certain products to Kana. Contract '002 required that all purchase orders executed pursuant to the agreement be identified as P.O. No. KA15100002.[9] A purchase order identified as P.O. No. KA15100002 ("P.O. '002") was cited by Kana during the state court litigation.[10] Contract '002 contains an arbitration clause:

**13. Arbitration**

All disputes in connection with this contract or the execution thereof shall be settled friendly through negotiations. In case no settlement can be reached, the case may then be submitted for arbitration to an arbitration commission located in Beijing, China. The Decision of the arbitration commission shall be final and binding upon both parties; neither party shall seek recourse to neither a law court nor other authorities to appeal for revision of the decision. Arbitration fee shall be borne by the losing party.[11]

---

[7]See id. at 141

[8]See Contract '002, Exhibit 1 to JMP's Response, Docket Entry No. 8-1, p. 2.

[9]See id.

[10]See Defendant Jiangsu Jinshi Machinery Group Co. Ltd.'s Response to Plaintiff's Motion to Remand ("JMP's Response"), Docket Entry No. 8, pp. 25-26 (noting that Kana attached Purchase Order '002 to its response to JMP's motion for partial summary judgment in the state court action); P.O. '002, Exhibit 1 to JMP's Response, Docket Entry No. 8-2, p. 13.

[11]See Contract '002, Exhibit 1 to JMP's Response, Docket Entry No. 8-1, p. 7.

JMP alleges that during the course of the parties' joint venture Kana and JHK entered into 66 similar contracts, many of which also contained similar arbitration clauses.[12]

Kana alleges that JMP and JHK breached the parties' oral joint venture agreement by supplying products that failed to comply with API standards.[13] After JMP and JHK delivered the allegedly defective products, Kana alleges that the JMP Entities further breached their agreement with Kana by "secretly engag[ing]" Helios to act as JMP's U.S. distributor and otherwise distributing JMP products in the United States.[14]

Kana originally filed suit against JMP, JMP Technologies, and Helios.[15] Kana alleges a number of claims against these entities, including various breach of warranty claims against JMP.[16] Kana subsequently amended its petition to add causes of action against JHK, including breach of contract, breach of warranty, and misappropriation of trade secrets.[17] Kana's amended petition also

---

[12] See JMP's Response, Docket Entry No. 8, p. 26 (stating that Contract '002 is "one of the 66 contracts between Kana and JHK that contain the arbitration clause").

[13] See Kana's State Court Petition, Exhibit B to Plaintiff's Motion, Docket Entry No. 6, p. 142.

[14] See id. at 143.

[15] See Original Petition Application for Injunctive Relief and Request for Expedited Discovery, Exhibit B-1 to Notice of Removal, Docket Entry No. 1-2.

[16] See Kana's State Court Petition, Exhibit B to Plaintiff's Motion, Docket Entry No. 6, pp. 147-54.

[17] See id. at 148-52.

added claims against a number of other Chinese entities that had yet to be served at the time JMP's Notice of Removal was filed.[18]

This action is not the only dispute pending between the parties. JHK and Kana are currently involved in an arbitration (the "Kana/JHK Arbitration") in China.[19] JHK has sued Kana seeking compensation for "dozens of unpaid invoices," the vast majority of which contain arbitration agreements falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), 9 U.S.C. §§ 201, et seq.[20] Kana alleges that JHK's nonpayment claims in the Kana/JHK Arbitration are based on purchase orders unrelated to this action.[21] JMP argues that the arbitration agreements between JHK and Kana apply to the claims in this action and has taken steps to compel Kana to arbitrate. JMP moved to compel arbitration of Kana's breach of warranty claims before removal.[22] The state court denied JMP's motion on November 13, 2018, without explanation.[23] JMP filed its Notice of Removal on

---

[18]See Notice of Removal, Docket Entry No. 1, pp. 2-3.

[19]See id. at 4.

[20]See id.

[21]See Plaintiff's Reply in Support of its Motion to Remand ("Plaintiff's Reply"), Docket Entry No. 10, p. 6.

[22]See Defendant Jiangsu Jinshi Machinery Group Co. Ltd.'s Motion to Compel Arbitration, Motion for Severance, and Plea in Abatement ("JMP's Motion to Compel Arbitration"), Exhibit C to Plaintiff's Motion, Docket Entry No. 6, p. 158.

[23]See Order Denying Defendant's Motion to Compel Arbitration, Motion for Severance, and Plea in Abatement ("Order Denying JMP's Motion to Compel Arbitration"), Exhibit E to Plaintiff's Motion, Docket Entry No. 6, p. 190-91.

January 18, 2019, arguing that the arbitration clauses contained in Kana's contracts with JHK provide the court with subject matter jurisdiction over this action pursuant to the grant of federal question jurisdiction contained in the Convention, 9 U.S.C. §§ 201, et seq.[24] Kana filed its Motion to Remand on February 15, 2019, arguing that the court must remand the action because the court lacks subject matter jurisdiction.[25]

## II. Analysis

Title 9 U.S.C. § 203 confers federal question jurisdiction over actions or proceedings "falling under the Convention." 9 U.S.C. § 203. The Convention endows federal courts with jurisdiction to decide whether an action that falls under the Convention is subject to arbitration and to compel the parties to arbitrate if appropriate. See 9 U.S.C. § 206. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." See Scherk v. Alberto-Culver Co., 94 S. Ct. 2449, 2457 n.15 (1974). "Because 'uniformity is best served by trying all [Convention] cases in federal court unless the parties

---

[24]See Notice of Removal, Docket Entry No. 1, pp. 1-2.

[25]See Plaintiff's Motion, Docket Entry No. 6, p. 5.

unequivocally choose otherwise,' Congress granted the federal courts jurisdiction over Convention cases and added one of the broadest removal provisions, § 205, in the statute books." Acosta v. Master Maintenance and Construction Inc., 452 F.3d 373, 377 (5th Cir. 2006). 9 U.S.C. § 205 states:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

Generally, removal statutes are construed "strictly against removal and for remand." Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100, 106 (5th Cir. 1996). However, the Fifth Circuit has recognized that "[s]o generous is [§ 205] that we have emphasized that the general rule of construing removal statutes strictly against removal 'cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court.'" Acosta, 452 F.3d at 377 (quoting McDermott International, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1213 (5th Cir. 1991)).

The Fifth Circuit has interpreted § 205 to require district courts to "assess their jurisdiction from the pleadings alone."

Beiser v. Weyler, 284 F.3d 665, 671 (5th Cir. 2002). Section 205 abrogates the well-pleaded complaint rule in this context and permits the court to look both to the plaintiff's complaint and the defendant's notice of removal to determine whether removal was proper. Id. The Fifth Circuit has also explicitly cautioned courts against conflating the jurisdictional and merits inquiries: A district court must determine whether it has jurisdiction under § 205 before determining the arbitrability of the claims in suit. See id. at 671, 674-75.

For removal to be proper under § 205, a defendant must show, based on the pleadings, (1) the existence of an arbitration agreement that falls under the Convention and (2) that the dispute relates to the arbitration agreement. Stemcor USA Incorporated v. Cia Siderurgica do Para Cosipar, 895 F.3d 375, 378 (5th Cir. 2018); QPro Inc. v. RTD Quality Services USA, Inc., 718 F. Supp. 2d 817, 820 (S.D. Tex. 2010).

A. **Is There an Agreement to Arbitrate that Falls Under the Convention?**

An agreement "falls under" the Convention when (1) there is an agreement in writing to arbitrate; (2) the agreement provides for arbitration in a territory that is a signatory to the Convention; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 903 (5th Cir. 2005). For removal to be appropriate under § 205 either

-8-

Kana's State Court Petition or JMP's Notice of Removal must show that the contracts executed between Kana and JHK contain at least one arbitration clause that "falls under the Convention."

The parties agree that at least some of the contracts between Kana and JHK contain arbitration clauses.[26] Written agreements to arbitrate are therefore present.[27] At least one of the arbitration clauses cited by JMP calls for arbitration to take place in Beijing, China, and China is a signatory to the Convention.[28] See Jiangsu Changlong Chemicals, Co., Inc. v. Burlington Bio-Medical & Scientific Corp., 399 F. Supp. 2d 165, 166 (E.D.N.Y. 2005) ("China is a signatory to the Convention . . . ."). The agreements to arbitrate between Kana and JHK arose from the joint venture, which is a commercial legal relationship. JHK is a citizen of China and not the United States.[29] JMP has therefore sufficiently demonstrated

---

[26] See Plaintiff's Motion to Remand, Docket Entry No. 6, p. 11 n.3; JMP's Response, Docket Entry No. 8, p. 13.

[27] The court agrees with JMP that it need not show that it has the right to enforce the arbitration agreement. See QPro, 718 F. Supp. 2d at 824 ("The defendant need not show that it has the right to enforce the arbitration agreement. It is enough that 'in certain limited instances, pursuant to an equitable estoppel doctrine, a nonsignatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff.'"). An arbitration agreement can be "related to" a plaintiff's claims even if the plaintiff cannot ultimately be forced to arbitrate. Id.

[28] See Contract '002, Exhibit 1 to JMP's Response, Docket Entry No. 8-1, p. 7.

[29] See Notice of Removal, Docket Entry No. 1, p. 5

the existence of at least one agreement to arbitrate between Kana and JHK that falls under the Convention.

B.  Does this Lawsuit "Relate To" the Arbitration Agreements Between JHK and Kana?

"Section 205 does not explicitly define when an action 'relates to' an arbitration agreement falling under the Convention." Acosta, 452 F.3d at 376.  The Fifth Circuit has held that an arbitration agreement "relates to" the subject matter of a lawsuit if the agreement could "conceivably affect" the outcome of the action:

> [W]henever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit.  Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the convention provides a defense.  As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case.  That is all that is required to meet the low bar of "relates to."

Beiser, 284 F.3d at 669.  The court must therefore determine whether, based on JMP's Notice of Removal and Kana's State Court Petition, the agreements to arbitrate between Kana and JHK could "conceivably affect" the outcome of this action.

The relevant agreements to arbitrate are signed by Kana and JHK, not by JMP.  Although JHK has not yet been served, JHK is a party to this action and Kana has pled claims against JHK.  At the center of this action is Kana's joint venture with the JMP

Entities, including JHK. At least one of the contracts containing an agreement to arbitrate -- Contract '002 -- appears to be executed in conjunction with the parties' joint venture.

Kana acknowledges the existence of the agreements to arbitrate cited by JMP, but argues that its claims in this action relate to equipment not covered by the agreements. Kana argues that "[o]ver the history of Kana's business relationship with Defendants, Kana has purchased some equipment under a written contract, while Kana has purchased other equipment without a written contract."[30] In its reply, Kana repeatedly states that the claims in this action involve only what it refers to as the "Warranty Equipment," which Kana alleges was purchased pursuant to an oral contract.[31] Kana refers to the equipment at issue in the Kana/JHK Arbitration as the "Beijing Equipment," and claims that the 66 written contracts asserted by JMP apply only to the Beijing Equipment.[32]

The issue of whether the agreements to arbitrate will ultimately apply to Kana's claims is not currently before the court. The court need only decide that the contracts are "related to" this action to exercise jurisdiction. The agreements to arbitrate like the one contained in Contract '002 are closely related to the joint venture upon which Kana's claims are based

---

[30]See Plaintiff's Reply, Docket Entry No. 10, p. 4.

[31]See id. at 6.

[32]See id.

since the relevant agreements to arbitrate were contained in contracts executed in performance of the parties' joint venture. Contracts like the '002 Contract are one of the only written manifestations of the parties' arrangement. Kana's claims in this action are based (at least in part) on its joint venture with the JMP Entities. For example, Kana has asserted claims for breach of contract against both JMP and JHK based on their alleged breaches of the joint venture agreement.[33] It is certainly possible that the application of an arbitration clause contained in a contract executed in performance of the joint venture agreement, like Contract '002, could conceivably affect the result of this action. This court therefore has subject matter jurisdiction pursuant to 9 U.S.C. § 203.

## C. Do Federal Questions Remain for the Court's Determination?

The court has subject matter jurisdiction over this action because at least one of the agreements to arbitrate between JHK and Kana falls under the Convention and is related to this lawsuit. However, merely because the court has subject matter jurisdiction over this action under § 203 does not mean that the court should decide Kana's claims on the merits:

> [T]he federal issue in [cases removed pursuant to § 205] will often be resolved early enough to permit remand to the state court for a decision on the merits. The

---

[33] See Kana's State Court Petition, Exhibit B to Plaintiff's Motion, Docket Entry No. 6, p. 148.

-12-

arbitrability of a dispute will ordinarily be the first
issue the district court decides after removal under
§ 205. If the district court decides that the arbitra-
tion clause does not provide a defense, and no other
grounds for federal jurisdiction exist, the court must
ordinarily remand the case back to state court . . .
Except for state law claims that turn out to be subject
to arbitration, § 205 will rarely permanently deprive a
state court of the power to decide claims properly
brought before it.

Beiser, 284 F.3d at 675. In removed cases where jurisdiction is based solely on § 203, the district court's role is to determine whether claims are arbitrable, and to compel arbitrable claims to arbitration. The Fifth Circuit has made clear that to the extent that claims are not subject to arbitration, they should be remanded to state court.

JMP submitted the issue of arbitrability to the state court for determination before filing its Notice of Removal.[34] After reviewing the parties' arguments and the relevant evidence, the state court judge denied JMP's Motion to Compel Arbitration.[35] Courts in the Fifth Circuit abide by the "well established principle that 'when a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court." Murray v. Ford Motor Co., 770 F.2d 461, 464

---

[34]See JMP's Motion to Compel Arbitration, Exhibit C to Plaintiff's Motion, Docket Entry No. 6, p. 158; Plaintiff Kana Energy Services, Inc.'s Response in Opposition to JMP's Motion to Compel Arbitration, Motion for Severance, and Plea in Abatement, Exhibit D to Plaintiff's Motion, Docket Entry No. 6, p. 174.

[35]See Order Denying JMP's Motion to Compel Arbitration, Exhibit E to Plaintiff's Motion, Docket Entry No. 6, pp. 190-91.

(5th Cir. 1985) (quoting Savell v. Southern Ry. Co., 93 F.2d 377, 379 (5th Cir. 1937)). The state court's Order Denying JMP's Motion to Compel Arbitration stands as though it had been issued by this court. Because the arbitrability of the claims-in-suit has already been determined,[36] no federal questions remain to support the exercise of jurisdiction under § 203. JMP does not argue that this court has subject matter jurisdiction on any other basis. This action will therefore be remanded to the state court for further proceedings on the merits of Kana's state-law claims.[37]

## III. Conclusion

This court has subject matter jurisdiction over this dispute under the Convention, 9 U.S.C. §§ 201, et seq., because there is an arbitration agreement that falls under the Convention and the agreement to arbitrate is related to this action. However, the

---

[36] To the extent that JMP argues that it has not yet had an opportunity to move to compel under the Convention Act, such argument lacks merit. The Federal Arbitration Act ("FAA"), under which JMP moved to compel arbitration in the state court, applies in Convention Act cases to the extent that it is not in conflict with the Convention. 9 U.S.C. § 208. Federal courts do not have exclusive jurisdiction over arbitration agreements falling under the Convention, and JMP could have sought to compel arbitration under the Convention in conjunction with its motion to compel under the FAA.

[37] If JMP disagreed with the ruling of the state court, the appropriate recourse would have been to seek interlocutory review at the state court of appeals. The Texas Civil Practice and Remedies Code provides for interlocutory appeal of a state district court's denial of a motion to compel arbitration in matters subject to either the FAA or the Texas General Arbitration Act. Tex. Civ. Prac. & Rem. Code §§ 51.016, 171.098.

state court has already determined that Kana's claims are not arbitrable under the relevant agreements. No federal questions remain for this court's determination. Plaintiff's Motion to Remand (Docket Entry No. 6) is therefore **GRANTED**, and it is **ORDERED** that this case be remanded to the 190th District Court of Harris County, Texas, for further proceedings on the merits.

The Clerk will provide a copy of this Memorandum Opinion and Order to the district clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this the 22nd day of May, 2019.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE